IN THE UNITED STATES DISTRICT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BRENT JACOBY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )    CIVIL ACTION NO. 13-0070-KD-B |
| | ) |
| SHERIFF HUEY MACK, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

## ORDER

Plaintiff Brent Jacoby brings this action pursuant to 42 U.S.C. § 1983, against Sheriff Huey Mack, Captain Jimmie Bennett, Sgt. Janie Lovett, Corporal Hallanda Winky and Officer Joshua McCants of the Baldwin County, Alabama Sheriff's Department. This action is now before the Court on remand from the Court of Appeals for the Eleventh Circuit (docs. 91, 92).[1]

I. Procedural background

On appeal, among other arguments, Plaintiff Brent Jacoby argued that this Court improperly granted summary judgment with respect to his retaliation claims against Sergeant

---

[1] The Eleventh Circuit affirmed summary judgment in favor of Mack and Bennett as to the claims for supervisory liability and inadequate conditions of confinement and in favor of Mack, Bennett, and Lovett as to the due process claims (doc. 91, p. 34-36; p. 32-34; p. 23-26). With respect to the excessive force claims based upon the pepper spraying incident, the Eleventh Circuit affirmed summary judgment in favor of Lovett but reversed summary judgment in favor of Winky and McCants upon finding they were not entitled to qualified immunity (Id., p. 16-17, n.13; p. 22-23). With respect to Plaintiff's retaliation claims against Lovett, the Eleventh Circuit affirmed the decision to grant summary judgment in her favor with respect to the pepper spraying incident and institution of disciplinary proceedings and reversed the decision to grant summary judgment in her favor with respect to searches of Plaintiff's cell and person upon finding a dispute of material fact as to whether Plaintiff's filing grievances was a motivating factor (Id., p. 30-32). The Eleventh Circuit found the district court did not address the retaliation claim against Lovett for placing Plaintiff in segregation for tobacco products and remanded it for consideration (Id., p. 28-29). The Eleventh Circuit found the district court did not address the retaliation claims against Winky and McCants for the pepper spraying incident and remanded it for consideration (Id., p. 26-27).

Lovett, Corporal Winky, and Officer McCants. The Eleventh Circuit found that this Court erroneously construed Plaintiff's complaint as alleging the retaliation claim only against Lovett. Instead, Plaintiff asserted retaliation claims against Lovett "with respect to being sent to segregation, the pepper spraying," and "also McCants and Winky with respect to the pepper spraying." *Jacoby v. Mack*, - - - Fed. Appx. - - -, 2018 WL 5876984, at *10 (11th Cir. 2018) (doc. 91, p. 26-27). Plaintiff's "retaliation claims as to McCants's and Winky's involvement in the pepper spraying" were remanded for consideration (doc. 91, p. 27). Plaintiff's retaliation claim against Lovett with respect to "sending him to segregation for tobacco products that were not his" was also remanded for consideration (doc. 91, p. 29).

II. <u>Findings of fact</u>

Pursuant to the mandate rule,[2] the relevant Findings of Fact are taken from the Factual Background in the Eleventh Circuit's opinion (doc. 91, p. 2-7, footnotes in original).

A. <u>Placement in Administrative Segregation</u>

> On January 6, 2013, prison officials received a tip that tobacco—contraband under jail policy—was located in the cell block to which Mr. Jacoby and several other inmates were assigned. Prison officials searched the cell and located tobacco taped to a string and hidden behind a door frame. All inmates who could have been implicated in this incident, including Mr. Jacoby, were taken to administrative segregation, even though another inmate confessed that the tobacco belonged to him. Mr. Jacoby was ultimately found not guilty of possession of contraband at a disciplinary hearing.

---

[2] "The mandate rule is a specific application of the 'law of the case' doctrine which provides that subsequent courts are bound by any findings of fact or conclusions of law made by the court of appeals in a prior appeal of the same case." *CSX Transportation, Inc. v. Alabama Dep't of Revenue*, 888 F.3d 1163, 1173–74 (11th Cir.), *opinion modified on denial of reh'g,* 891 F.3d 927 (11th Cir. 2018) (citation omitted). "That rule 'has its greatest force when a case is on remand to the district court.'" *Id.* (citation omitted). "A district court 'must implement both the letter and the spirit of the mandate taking into account the appellate court's opinion and the circumstances it embraces.'" *Id.* (citation omitted). "Although a district court is 'free to address, as a matter of first impression, those issues not disposed of on appeal,' it is 'bound to follow the appellate court's holdings, both expressed and implied.'" *Id.* (citation omitted).

. . .

B. <u>Pepper Spraying, Decontamination, and Restraint</u>

On January 7, 2013, the day after Mr. Jacoby was placed in administrative segregation, Appellee Officer McCants ("McCants") watched Mr. Jacoby kick his cell door several times. McCants instructed Mr. Jacoby to stop kicking the door, but when McCants walked away Mr. Jacoby kicked the door again and said, "McCants you're not going to do nothing." McCants then contacted floor supervisor Appellee Corporal Hallanda Winky ("Winky") about this incident. Winky informed Appellee Sergeant Lovett ("Lovett") that Mr. Jacoby was being disruptive and refusing to follow instructions. Lovett instructed Winky to remove Mr. Jacoby from his cell and to spray him with pepper spray if he continued to be combative and refuse to follow instructions. Lovett neither observed Mr. Jacoby's behavior nor was present when Mr. Jacoby was removed from his cell.

A video recording, lasting approximately six and a half minutes, captures what occurred next. Winky, standing among a group of officers, directs the group to remove Mr. Jacoby from his cell and states, "I'll tell y'all like this. You already got permission, you know what to do." One officer asks another, "you want to spray him?" The group of at least six officers proceeds up the stairs and stops at Mr. Jacoby's cell, which is occupied by three inmates including Mr. Jacoby. When the officers open the cell door, Mr. Jacoby is on the floor of the cell, with his knees bent under his body and the top half of his body bending forward and touching the floor. Mr. Jacoby is clad in pants rolled up into capris and is not wearing a shirt, socks, or shoes. The camera's view is obscured by officers standing partially in front of it, so the location of Mr. Jacoby's hands is not pictured. The other two inmates, one sitting on a top bunk bed and another sitting on a bottom bunk bed, are instructed to leave and do so. As the other inmates are leaving the cell, McCants and another officer step into the cell and Officer McCants is heard saying "lay down, Jacoby,"[2] to which Mr. Jacoby responds "I am." Mr. Jacoby remains in the same position on the floor, with his knees bent under him. The video records McCants saying "down" and another officer saying "hands behind your back" in rapid succession.[3] The location of Mr. Jacoby's hands is still not pictured in the video recording. The parties do not dispute, however, that Mr. Jacoby's hands were not behind his back at this time.[4] Less than a second later, McCants begins spraying Mr. Jacoby and continues to do so for approximately two seconds.[5] The next time Mr. Jacoby is visible in the video, he is lying flat on the floor, face down, with his hands behind his back as

3

McCants is handcuffing him and helping him stand. Mr. Jacoby is then heard saying, "What'd you do that for?"

McCants and the group of officers then lead Mr. Jacoby, whose back is glossy—visibly wet from the spray—down the stairs. Mr. Jacoby argues about kicking the door and the use of the pepper spray, stating, "Seriously? You sprayed me for that?" As he is being led to decontaminate, Mr. Jacoby threatens to sue all of the officers involved, states that what just occurred was an unnecessary use of force, and complains about being "locked up for somebody else's tobacco." Mr. Jacoby is directed to a large sink in a closet, where McCants hoses off his face and head—but not his back—for approximately forty-five seconds and wipes his face off with paper towels. Mr. Jacoby asks to be further decontaminated, stating, "That's all I get? I need some more, man, please. Get my eyes again."

Mr. Jacoby is led to a four point restraint chair and is pictured squinting and shaking his face as if to dry it off. Mr. Jacoby complains about being sprayed while lying down, stating, "If I had known that, you could have at least let me turn around and fight you or something. I don't deserve to be sprayed." As Mr. Jacoby is placed in the arm restraints he is seen wiping his eyes on his pants and an officer approaches and says, "You don't want to rub them, I promise, it'll be worse." Once fully restrained, Mr. Jacoby requests to be further decontaminated and requests clean pants and boxers. An officer responds, "We're going to take care of you." At this point, the video ends.

Mr. Jacoby, in his verified complaint, states that he remained in the restraint chair for eight and a half hours and that he was unable to use the bathroom or change his clothes during this time.[6] Mr. Jacoby asserts that the burning sensation caused him to cry out for water and to scream in agony, but no one addressed his concerns and he was forced to urinate on himself. After being released from the chair after eight and a half hours, Mr. Jacoby was not provided access to a shower or clean clothes until about eighteen hours after he was pepper sprayed. Appellees do not dispute—and do not address whatsoever—these facts regarding Mr. Jacoby being pepper sprayed on the back but only decontaminated on his face and head, the length of his time in the restraint chair, his inability to use the bathroom, his cries for help, or the length of time he waited to shower and to receive clean clothes. These facts are accordingly not in dispute for purposes of summary judgment.[7]

> [2] In McCants's activity report narrative he states that he directed Mr. Jacoby more specifically to lie down on his stomach.

Similarly, in Winky's officer statement, she states that Mr. Jacoby was directed to lie flat. Both of these assertions are belied by the video documenting the entire encounter in Mr. Jacoby's cell. "Where the video obviously contradicts [a party's] version of the facts, we accept the video's depiction instead of [the party's] account." Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1315 (11th Cir. 2010) (citing Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1776 (2007)).

[3] In McCants and Winky's affidavits they both state, however, that Mr. Jacoby was instructed to put his hands behind his <u>head</u> and did not do as instructed prior to being sprayed. Again, these assertions are contradicted by the video in which Mr. Jacoby is instructed to put his hands behind his back. We accordingly decline to accept McCants's and Winky's contrary assertions.

[4] Both McCants in his activity report narrative and Winky in her officer statement state that Mr. Jacoby's hands were not behind his back prior to being sprayed. Jacoby, in his verified response to Appellees' motion for summary judgment, merely states that his hands and arms were visible prior to being sprayed. Accordingly, Mr. Jacoby has not created a genuine dispute as to this factual matter.

[5] Winky was written up for allowing a subordinate officer to spray Mr. Jacoby because Lovett had specifically ordered that Winky spray Mr. Jacoby if necessary.

[6] Mr. Jacoby's initial complaint is verified and therefore, "may be treated as an affidavit on summary judgment[.]" United States v. Four Parcels of Real Prop. In Greene & Tuscaloosa Ctys., 941 F. 3d 1428, 1444 n.35 (11th Cir. 1991).

[7] As we have previously recognized, what we state as "facts" for purposes of reviewing a summary judgment motion may not be the actual facts determined in further proceedings. Swint v. City of Wadley, 5 F.3d 1435, 1439 (11th Cir. 1993), overruled on other grounds by Swint v. Chambers Cty. Comm'n, 514 U.S. 35, 115 S. Ct. 1203 (1995).

(Doc. 91, p. 2-7).

III. Conclusions of law

A. Summary judgment standard

"Summary judgment is appropriate if there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Jacoby v. Mack*, 2018 WL 5876984, at *4 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)) (doc. 91, p. 10).

"[I]n the qualified immunity context, '[w]e resolve all issues of material fact in the plaintiffs' favor and approach the facts from the plaintiffs' perspective because [t]he issues appealed here concern not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law.'" *Id*. (quoting *Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012) (citation omitted)) (doc. 91, p. 11). "To overcome summary judgment where qualified immunity is at issue, 'the facts in dispute must raise a genuine issue of fact material to the determination of the underlying issue.'" *Id*. (citation omitted).

B. Qualified Immunity

"[Q]ualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (internal quotation marks and citation omitted). "The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability or harrassive litigation,

6

protecting from suit all but the plainly incompetent or one who is knowingly violating federal law." *McCullough v. Antolini,* 559 F.3d 1201, 1205 (11th Cir. 2009) (internal quotation marks and citation omitted).

"In order to receive qualified immunity" Defendants "must first establish that [they were] acting within the scope of [their] discretionary authority when the alleged wrongful acts occurred." *Id*. If Defendants make this showing, the burden shifts to Plaintiff to show that they are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2004) (Once that showing is made, the burden shifts to plaintiff to establish that qualified immunity does not apply). To do so, Plaintiff must "show[ ] (1) that [Defendants] violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Wood v. Moss*, ⎯⎯ U.S. ⎯⎯, 134 S. Ct. 2056, 2066-67 (2014) (internal quotation marks and citation omitted).

IV. Analysis

A. Defendants Winky and McCants

1. Plaintiff's claims and argument

In his verified complaint,[3] Plaintiff claims that McCants (John Doe #1) engaged in "retaliatory treatment" because he "came into Jacoby's cell per Sgt Lovetts orders and opened fire on Jacoby with mace for no reason and left him in a restraint chair to burn for 8½ hours without being properly decontaminated" (doc. 1, p. 15). He claims that Winky (John Doe #2)

---

[3] The Eleventh Circuit found that Plaintiff's initial complaint, although superseded by an amended complaint, was verified and "may be treated as an affidavit on summary judgment[]" (doc. 91, p. 7, n. 6).

7

engaged in "retaliatory treatment" because she "stood by and watched [McCants] spray Jacoby for no reason and refused to decontaminate him and strapped him to a chair for nothing" (Id.).[4]

In response to the motion for summary judgment, Plaintiff argues that Lovett "ordered" McCants and Winky to spray him "with pepper spray and to strap him to a chair for 8 hours without properly decontaminating him for retaliatory reasons with every intention of hurting him due to him being a jailhouse lawyer and filing grievances and lawsuits" (doc. 39, p. 1). He states that "[d]uring his 2 year stay he was known as a jailhouse lawyer and filed numerous grievances and lawsuits on his and other inmates behalf and because of this [he] was constantly harassed and retaliated against" (Id. p. 4). Plaintiff asserts that he did nothing wrong to justify the pepper spray incident and as evidence, points out that he was not given a disciplinary or a rule violation (Id., p. 5). He alleges that the "attack … was premeditated and strictly done for retaliatory reasons with all intentions of causing him harm" and that Defendants "had it in [their] minds to spray [Plaintiff] per the orders of Lovett" (Id., p. 6).   Overall, Plaintiff argues that he "clearly connected the dots from Point-A to Point-Z and showed this court the constant harassing, searches, disciplinaries and assaults [Lovett] has been part of in regards to her (Sgt Lovett) retaliating against" him (*sic*) (Id., p. 21).

2. Qualified immunity

Winky and McCants argue that they were acting within the scope of their discretionary authority at all relevant times. Plaintiff does not dispute their position (doc. 91, p. 12, n.11). *McCullough v. Antolini,* 559 F.3d at 1205. The first element having been met, the burden shifts to Plaintiff to show that Winky and McCants are not entitled to qualified immunity. *Cottone v.*

---
[4] Plaintiff included more details regarding the pepper spraying, decontamination and restraint in the unverified amended complaint (doc. 38-1).

*Jenne*, 326 F.3d at 1358. To do so, Plaintiff must show that Winky and McCants (1) "violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Wood v. Moss*, 134 S. Ct. at 2066-67 (internal quotation marks and citation omitted).

    a. Clearly established constitutional right

Filing inmate grievances and lawsuits is a clearly established right of free speech that is constitutionally protected under the First Amendment. *Hollins v. Samuals*, 540 Fed. Appx. 937, 938–39 (11th Cir. 2013) ("We've routinely held that a prisoner's complaints about prison conditions, via administrative grievances, lawsuits, and the like are protected under the First Amendment."); *Jacoby v. Mack*, 2018 WL 5876984, at *10–11 ("The First Amendment prohibits prison officials from retaliating against prisoners for exercising their right of free speech by filing lawsuits or grievances.").

    b. Violation of Plaintiff's First Amendment Rights

"When officers punish an inmate for filing grievances concerning the conditions of his confinement, they violate the inmate's First Amendment rights to free speech and to petition the government for redress of grievances." *Maldonado v. Unnamed Defendant,* 648 Fed. Appx. 939, 955 (11th Cir. 2016). Thus, the Plaintiff may

> . . . maintain a cause of action for retaliation under 42 U.S.C. § 1983 by showing that a prison official's actions were "the result of [the inmate's] having filed a grievance concerning the conditions of his imprisonment." To establish a First Amendment retaliation claim, a prisoner need not allege the violation of an additional separate and distinct constitutional right; instead, the core of the claim is that the prisoner is being retaliated against for exercising his right to free speech. To prevail on a retaliation claim, the inmate must establish that: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal

9

relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]."

*Jacoby v. Mack*, 2018 WL 5876984, at *11 (quoting *O'Bryant*, 637 F. 3d at 1212) (doc. 91, p. 28); *see also Bennett v. Hendrix*, 423 F. 3d 1247, 1254 (11th Cir. 2005) (adopting the objective "ordinary firmness" test). "The causal connection inquiry asks whether the defendants were subjectively motivated to discipline because [Plaintiff] complained of some of the conditions of his confinement." *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008).

To resolve the question of subjective motivation, courts have applied the *Mt. Healthy* burden-shifting analysis. *Id.*, (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S. Ct. 568 (1977)). "'[O]nce the plaintiff establishes that the protected conduct was a motivating factor behind the harm, the burden of production shifts to the defendant. The defendant can prevail on summary judgment if it can show it would have taken the same action in the absence of the protected activity.'" *Jacoby v. Mack*, 2018 WL 5876984, at *11 (quoting *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013)) (doc. 91, p. 28).

Plaintiff has met the first element. He established that filing grievances and lawsuits is constitutionally protected speech. *Jacoby v. Mack*, 2018 WL 5876984, at *11 With respect to the second element and for purposes of this summary judgment analysis,[5] the Court finds that a person of ordinary firmness would find Winky's and McCants's alleged actions, a deterrent to filing grievances and lawsuits. *Henry v. Lipford*, 2014 WL 2779588, at *7 (N.D. Fla. June 19, 2014) ("For purposes of summary judgment the Court concludes that being pepper sprayed in

---

[5] The Eleventh Circuit explained that "what we state as 'facts' for purposes of reviewing a summary judgment motion may not be the actual facts determined in further proceedings." *Jacoby v. Mack*, 2018 WL 5876984, at *3, n. 7.

response to filing grievances would likely deter a person of ordinary firmness from filing grievances against prison staff.").

With respect to the third element, a "causal relationship between" the pepper spraying incident and the "protected activity", the "inquiry asks whether the defendants were subjectively motivated to discipline because [Plaintiff] complained of some of the conditions of his confinement." *Smith v. Mosley*, 532 F.3d at 1278. McCants and Winky argue that Plaintiff has not presented any evidence of a subjective retaliatory motive on their part, and that his conclusory allegations based on his assumptions as to their motivation are not enough to establish a causal relationship and thus, a constitutional violation (doc. 68, p. 16).

The Court agrees. Plaintiff has failed to provide any evidence that his history of filing grievances and lawsuits was a motivating factor with respect to Winky's and McCants's involvement in the pepper spraying incident. He fails to identify any specific lawsuit or grievance that may have led them to retaliate against him,[6] but rather he relies on his activities as a jailhouse lawyer. "The situation is somewhat complicated when the alleged act of retaliation is undertaken to assure compliance with prison rules and regulations as inmates often attempt to 'inappropriately insulate themselves from [such] actions by drawing the shield of retaliation around them.'" *Webb v. Boyd*, 2017 WL 603005, at *6 (M.D. Ala. Jan. 23, 2017), *report and recommendation adopted*, 2017 WL 600090 (M.D. Ala. Feb. 14, 2017) (quoting *Woods v. Smith*,

---

[6] The Eleventh Circuit found that Plaintiff had not "presented any evidence of Lovett having retaliatory animus as to the pepper spraying" and that this Court had properly granted Defendants' motion for summary judgment (doc. 91, p. 30). In reaching the decision to grant summary judgment, this Court found that "[a]side from his conclusory allegations [Plaintiff] has not offered any facts that suggest, let alone demonstrate, that Defendant Lovett sought to retaliate against him. In fact, he has not even identified any specific grievance or lawsuit that purportedly led Sgt. Lovett to take any type of retaliatory action." *Jacoby v. Mack*, 2016 WL 1117525, at *12 (S.D. Ala. Mar. 22, 2016).

60 F.3d 1161, 1166 (5th Cir. 1995) (bracketed text in original).[7] When this shield is drawn, the federal courts must "carefully scrutinize retaliation claims . . . because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Mosley v. Borders*, 2016 WL 2765071, at *8 (M.D. Ala. Apr. 15, 2016), *report and recommendation adopted sub nom*. *Mosley v. M. Borders*, 2016 WL 2640524 (M.D. Ala. May 9, 2016) (bracketed text in original).

Without evidence to support his conclusory assumption that Winky and McCants were motivated to retaliate against him, Plaintiff has failed to meet his burden to establish a violation of his First Amendment rights. *Jacoby v. Baldwin Cty.*, 666 Fed. Appx. 759, 762 (11th Cir. 2016) ("This court has consistently held that conclusory allegations [in an affidavit] without specific supporting facts have no probative value."); *Webb v. Boyd*, 2017 WL 603005, at *6 ("Merely alleging the ultimate fact of retaliation, however, is insufficient. [ ] Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to establishing retaliation.") (internal citations omitted). Therefore, Winky and McCants are entitled to qualified immunity and summary judgment is granted in their favor as to this claim.[8]

---

[7] Plaintiff alleges that he did nothing wrong to bring about the pepper spraying incident, and from that position, he argues that Lovett ordered a "hit" on him and that McCants and Winky carried out the orders. From his assumption that these events occurred, Plaintiff concludes that Winky and McCants had a retaliatory motive (doc. 39, p. 5). However, the Eleventh Circuit found that McCants contacted Winky because Plaintiff would not stop kicking the cell door. Winky informed Lovett that Plaintiff "was being disruptive and refusing to follow instructions" from McCants. "Lovett instructed Winky to remove Mr. Jacoby from his cell and to spray him with pepper spray if he continued to be combative and refuse to follow instructions." (Doc. 91, p. 3-4).

[8] Plaintiff did not argue that Winky and McCants retaliated against him because he threatened to sue the officers while on the way to decontamination (doc. 1, complaint: doc. 38-1, amended

B. Defendant Lovett

1) Plaintiff's claims and arguments regarding placement in Segregation

The Eleventh Circuit summarized Plaintiff's claims against Lovett, as follows:

> Mr. Jacoby, in his amended complaint, contends that he was sent to segregation when contraband tobacco was located in his cell, even after another inmate confessed that the tobacco was his. Mr. Jacoby further contends that he and the inmate that confessed to possessing the tobacco were taken to segregation while the other inmates in his cell who could have been implicated in the infraction were allowed to stay in general population. The district court did not address this allegation in its opinion, despite it being raised in both Mr. Jacoby's initial complaint and his amended complaint. Mr. Jacoby's verified response[9] in opposition to Defendants' motion for summary judgment before the district court similarly outlined facts that Lovett placed Jacoby in lockup for tobacco that another inmate admitted to owning. Further, despite Appellee's contention that Mr. Jacoby "never mentioned any other persons who were supposedly treated differently than he" with respect to this incident, Mr. Jacoby's verified response[10] states that "he was the only inmate locked up despite the fact that he shared a cell with three other inmates." Accordingly, this claim will be remanded to the district court for consideration.

(Doc. 91, p. 29). [11]

---

complaint; doc. 39 response to the motion for summary judgment). As with his excessive force claim, (doc. 91, p. 15, n.12), Plaintiff alleged a single retaliation claim against Winky and McCants.

[9] The Eleventh Circuit found that Plaintiff's response was verified (doc. 91, p. 10, n. 9). However, at the end of the response, Plaintiff merely states "Respectfully Submitted, Brent Jacoby Pro Se" (doc. 39, p. 21). He did add a signed Certificate of Service, wherein he states: "I declare under penalty of perjury that on this 19th day of Dec. 2014 I did place a summary judgment reply to my mother . . . to make copies and send to this court and Jamie Kidd (Defendants Attorney)" (Id., p. 22).

[10] *See* footnote 9.

[11] In his original complaint, Plaintiff states that his Cell mate "went to segregation with him" but was "released from Segregation after only spending 10 minutes in Segregation per Sgt Lovett because the cigarette wasn't his but yet Jacoby was kept in Segregation until his hearing despite the fact the cigarette did not belong to Jacoby or his Cellmate" (doc.1, p. 5). In his amended

13

2. Qualified immunity

On motion for summary judgment, Defendant Lovett argues she is entitled to qualified immunity because she was acting within her discretionary authority and Plaintiff cannot show any violation of his clearly established constitutional rights (doc. 32, p. 16-19). Plaintiff does not dispute that Lovett was acting within her discretionary authority (doc. 91, p. 12, n.11). *McCullough v. Antolini,* 559 F.3d at 1205. The first element having been met, the burden shifts to Plaintiff to show that Lovett is not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d at 1358. To do so, Plaintiff must show that Lovett (1) "violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Wood v. Moss*, 134 S. Ct. at 2066-67 (internal quotation marks and citation omitted).

a. Clearly established constitutional right

Filing inmate grievances and lawsuits is a clearly established right of free speech that is constitutionally protected under the First Amendment. *Hollins v. Samuals*, 540 Fed. Appx. at 938–39) ("We've routinely held that a prisoner's complaints about prison conditions, via administrative grievances, lawsuits, and the like are protected under the First Amendment."); *Jacoby v. Mack*, 2018 WL 5876984, at *10–11 ("The First Amendment prohibits prison officials from retaliating against prisoners for exercising their right of free speech by filing lawsuits or grievances.").

---

complaint, Plaintiff states that "Inmate Purdue admitted to …Sgt. Lovett that the cigarette was his … Needless to say, Sgt. Lovett and Corporal Spencer took Jacoby to segregation anyways with inmate Purdue – and Sgt. Lovett let the other 3 inmates that Jacoby shared the cell with stay in population with no disciplinary infractions" (doc. 38-1, p. 1). Even though the versions of the facts vary, the variance is not material. In either scenario, Plaintiff alleges that after inmate Purdue confessed ownership, other inmates were treated differently from him. From this, Plaintiff infers a retaliatory motive.

b. Violation of Plaintiff's First Amendment Rights

The Eleventh Circuit found that the parties "are in agreement as to the first two elements" of Plaintiff's First Amendment retaliation claims against Lovett– that he engaged in constitutionally protected speech and the alleged retaliatory conduct by Lovett would deter a person of ordinary firmness from engaging in the protected speech (doc. 91, p. 28-29). However, the parties disagreed "as to whether [Plaintiff] has established a causal relationship between Lovett's complained of conduct and [his] filing of grievances and lawsuits." (Id.) "With these guiding principles in mind", the Eleventh Circuit considered the arguments underlying Plaintiff's retaliation claims against Lovett. (*Id.*, p. 29). Therefore, this Court begins its analysis by addressing whether Plaintiff has alleged sufficient facts, taken as true and viewed in the light most favorable to him, establish a causal relationship between Lovett's placement of Plaintiff in Segregation and his filing of grievances and lawsuits.

In response to the motion for summary judgment, Plaintiff alleges that he is "known as a jailhouse lawyer and [has] filed numerous grievances and lawsuits on his own and other inmates behalf" (doc. 39, p. 4). Because of these activities, he was "constantly harassed and retaliated against with … bogus disciplinary charges in order to keep him confined in lockup" and "hamper his ability to pursue his non frivolous legal actions" (Id., p. 4-5). He asserts that on January 6, 2013, Lovett had him "locked up for a bogus smoking and contraband charges despite the fact no contraband was found in his possession and another inmate admitted ownership" (Id., p. 5). Plaintiff argues that because his three cellmates, who also had access to the contraband, were not locked up "this has clear harassment and retaliation wrote all[] over it." (Id., p. 1, 5). Plaintiff supports his "retaliatory treatment" claims by alleging that "Lovett threw Jacoby in segregation and not his cellmates for tobacco despite the fact she knew it wasn't his." (Id., p. 14). He argues

15

that he "clearly connected the dots from Point-A to Point-Z and showed this court the constant harassing, searches, disciplinaries and assaults [Lovett] has been part of in regards to her (Sgt Lovett) retaliating against" Plaintiff (Id., p. 21). At the disciplinary hearing, held three days later, on January 9, 2013, Plaintiff was found not guilty and returned to Population (doc. 1, p. 7).

Lovett argues that Plaintiff did not identify any particular grievance or lawsuit that would have led her to take retaliatory action (doc. 32, p. 33). Lovett argues that Plaintiff relies on "vague allegations that he was subjected to searches and disciplinary proceedings because [she] was 'upset over Jacoby writing Grievances and Lawsuits on her and Filing for Restraining Orders." (Id., quoting Doc. 1, p. 6). Lovett points out that she had never been named a defendant in any of Plaintiff's lawsuits before this action. (Id.)[12]

Plaintiff's conclusory assumption that Lovett acted with a retaliatory motive because she treated other inmates differently is not sufficient to establish retaliation. Plaintiff fails to identify any specific lawsuit or grievance that may have motivated Lovett, but rather he relies on his activities as a jailhouse lawyer. Also, at that time, Plaintiff had not filed a lawsuit against Lovett. "Without any evidence that his filing grievances was a motivating factor behind [placement in segregation], a reasonable jury could not return a verdict in his favor on this retaliation claim." *Jacoby v. Mack,* 666 Fed. Appx. at 762. Again, Plaintiff cannot "insulate" himself from "disciplinary actions by drawing the shield of retaliation around them[.]" *Woods v. Smith*, 60 F.3d at 1166. And as previously stated, when this shield is drawn, the federal courts must "carefully scrutinize retaliation claims . . . because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional

---

[12] In her affidavit, Lovett states that she does "not have any personal feelings of ill will toward Plaintiff, nor … any reason to attempt to 'retaliate' against him." (doc. 32-3, ¶ 11).

violation—can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Mosley v. Borders*, 2016 WL 2765071, at *8 (bracketed text in original).

However, assuming for purposes of summary judgment,[13] that Plaintiff could establish a causal relationship between his placement in Segregation and his protected activity on basis that he was kept in Segregation while his cellmates returned to or stayed in Population, Lovett has met her burden to show that she would have taken the same action even without the protected activity. *Jacoby v. Mack*, 2018 WL 5876984, at *11 ("'[O]nce the plaintiff establishes that the protected conduct was a motivating factor behind the harm, the burden of production shifts to the defendant. The defendant can prevail on summary judgment if it can show it would have taken the same action in the absence of the protected activity.'") (quoting *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013)) (doc. 91, p. 28).

Lovett asserts that "Plaintiff has not been retaliated against because he filed previous lawsuits" but instead "[a]ll actions taken vis-à-vis Plaintiff have been based on Defendants' best judgment as to how to preserve the safety and security of the facility and all visitors, staff, and inmates" and to "is a protective measure designed to guard against potential fights and/or disputes over fault" (doc 32, p. 5-6). Lovett asserts that she "ordered that all inmates who could be implicated in this incident, including Plaintiff and his cellmate, to be taken to administrative segregation while the investigation was completed" and that this "order was in accordance with the general policy that any inmate who might be implicated in an offense be placed in

---

[13] When addressing a qualified immunity argument, the court must "resolve all issues of material fact in the plaintiffs' favor and approach the facts from the plaintiffs' perspective" to ascertain "whether or not certain given facts showed a violation of clearly established law.'" *Jacoby v. Mack,* 2018 WL 5876984, at *4 (quoting *Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012) (citation omitted)) (doc. 91, p. 11).

administrative segregation for the safety and security of the facility during an ongoing investigation" (Id., p. 7-8). Lovett also asserts that she and Cpl. Spencer[14]

> both had personal knowledge of Plaintiff's extensive history of obtaining and hiding contraband. This knowledge played a role in Sgt. Lovett's decision to send Plaintiff to administrative segregation on January 6 because it made her suspicious that Plaintiff did in fact have some involvement with the contraband. Her decision was also based on her knowledge of Plaintiff's his history of self-harm and various behavioral problems. She therefore determined that it would be best for the safety and security of the other inmates, the staff, and Plaintiff himself that he be placed in a more controlled environment during this time.

(Id., p. 8).[15] Plaintiff did not dispute these allegations (doc. 39).

The undisputed facts show that an "objective prison administrator" faced with the same circumstance would have taken the same action to maintain order, safety, and security at the jail and in view of his history, to place Plaintiff in a more controlled environment. *Jacoby v. Mack,* 666 Fed. Appx. at 763 (finding that Jacoby's "history of refusing to cooperate with officers" and "hiding contraband … were legitimate, non-retaliatory reasons behind [Defendant's] decision to transfer him."); *see also Webb v. Boyd*, 2017 WL 603005, at *7 (applying the *Mt Healthy* analysis and finding that "objective prison administrators standing in [the defendants'] shoes" would have made the same decision) (bracketed text in original).

---

[14] Spencer was dismissed from this action (doc. 38-1).

[15] As to his history of self-harm, Defendants reference Plaintiff's past attempts to cut himself with a razor blade (doc. 32, p. 9). In a prior lawsuit, Plaintiff alleged that on August 20, 2012, he obtained a razor blade and began to cut his throat. He was stopped, his throat was bandaged, and he was placed on suicide watch in a restraint chair. "Several hours later, he pulled his hands out of the restraints and began cutting on his throat again with a razor he had swallowed." He was treated and taken to an observation cell. The next day, he cut his wrist and rammed his head into the cell bars. He was treated again and put in the restraint chair, and transferred to a suicide cell. Ultimately, he was assessed by Baldwin County Mental Health. *Jacoby v. Baldwin Cty.*, 2014 WL 2641834, at *3 (S.D. Ala. June 13, 2014), *aff'd,* 835 F.3d 1338 (11th Cir. 2016).

Since Plaintiff has failed to establish evidence of a causal relationship, he cannot establish that Lovett violated his First Amendment rights by placing him in Segregation. Therefore, Lovett is entitled to qualified immunity as to this claim. Accordingly, summary judgment is granted in Lovett's favor with respect to this claim of retaliation.

**DONE** and **ORDERED** this the 3rd day of April 2019.

**s/ Kristi K. DuBose**
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**
